UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EULALIE FRANCIS WHITE MARTINEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br><br>  Defendant. | Case No. 13-cv-00985-MEJ<br><br>**ORDER REMANDING CASE FOR CLARIFICATION**<br><br>Re: Dkt. Nos. 20, 21 |

## INTRODUCTION

Plaintiff Eulalie Francis White Martinez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 20, 21. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the Administrative Record ("AR") in this case, and relevant legal authority, the Court hereby REMANDS this case for clarification as discussed below.

## BACKGROUND

In April 1999, Plaintiff sustained a head and shoulder injury when "a bunch of stuff" fell on her head at work. AR 91, 446, 450. Neurological tests at the time of the injury indicated a mildly reduced range of motion in her neck, tenderness over her neck and arm muscles, and no nerve damage. AR 461-62. A shoulder x-ray and head scan were both normal. AR 471, 474. Plaintiff has not worked since her April 1999 workplace injury. In 2004, when Plaintiff last saw her treating orthopedist, Richard Nolan, M.D., he opined that Plaintiff could return to modified

work.  AR 976-82.

John D. Warbritton III, M.D.A., a consultative orthopedic surgeon, examined Plaintiff on December 14, 2004, in connection with her workers compensation claim.  AR 746-53.  He diagnosed her with occasional slight to moderate headaches and opined that she was precluded from heavy lifting or repetitive, twisting neck motion.  AR 750.

In connection with a previous 2006 disability application,[1] Calvin Pon, M.D., completed an orthopedic consultative examination on August 8, 2006.  AR 759-61.  Based on his evaluation and review of the records, Dr. Pon diagnosed chronic neck pain with a diagnosis of cervical spondylosis per the medical record review and chronic mild low back pain.  AR 761.  Dr. Pon found no restriction in standing, walking, or sitting, but limited stooping, crouching, kneeling, and squatting to occasionally.  AR 761.  He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and occasionally stoop, crouch, kneel, squat, crawl, and climb ladders.  AR 761.

On September 25, 2006, State agency physician L. L. VanCompernolle, M.D., completed a Physical Residual Functional Capacity Assessment.  AR 763-67.  Dr. VanCompernolle opined that Plaintiff could: (1) occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; (2) stand, sit, and/or walk about 6 hours in an 8-hour workday; (3) push and/or pull in an unlimited capacity; (4) frequently balance and kneel; (5) occasionally climb, stoop, crouch, and crawl; and (6) never balance.  AR 764-65.  Dr. VanCompernolle found no manipulative, visual, or environmental limitations.  AR 765-66.

In connection with Plaintiff's 2008 disability application, Kamyar Madani, M.D., completed a comprehensive internal medicine evaluation on August 19, 2008.  AR 789-92.  Dr. Madani noted that Plaintiff lived by herself and does her own housework, and the only medication she took was white willow as an herbal supplement.  AR 789-90.  He diagnosed chronic neck and shoulder pain, as well as lower back pain, likely degenerative disc disease, myofascial pain

---

[1] Plaintiff had at least two prior unsuccessful applications.  AR 38, 118-19.

syndrome, and traumatic brain injury. AR 791. Dr. Madani determined that Plaintiff could stand, sit, and walk at least six hours, with no need for an assistive device. AR 791-92. She could lift and carry 10-20 pounds, but could not continuously bend, stoop, crawl, pull, or reach. AR 792. He determined that she did not have complete language skills, but could carry on a "fairly normal" conversation in terms of expression and did not have any major word finding difficulties. AR 792.

On August 26, 2008, Plaintiff underwent a consultative psychological evaluation with Maria Kerosky, Ph.D. AR 794-800. Dr. Kerosky administered a mental status examination, Bender Gestalt II Test; WAIS-III, and WMS-III. AR 794. She found that Plaintiff functions in the low average range of intelligence. AR 798. Dr. Kerosky determined that Plaintiff would have no significant difficulty following complex/detailed instructions at work, but would have mild difficulty maintaining adequate pace and persistence to perform tasks consistently, and would have mild difficulty maintaining adequate attention/concentration. AR 799. Dr. Kerosky also determined that Plaintiff would have mild difficulty adapting to change in job routine, moderate to marked difficulty withstanding the stress of a routine work day, and mild to moderate difficulty maintaining emotional stability/predictability. AR 799. She found no significant difficulty in her ability to communicate and interact appropriately with co-workers, supervisors, and the public. AR 799.

Dr. VanCompernolle completed a second Physical Residual Functional Capacity Assessment on September 8, 2008. AR 802-07. Dr. VanCompernolle opined that Plaintiff could: (1) occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; (2) stand, sit, and/or walk about 6 hours in an 8-hour workday; (3) push and/or pull in a limited capacity in the upper extremities; (4) frequently balance, kneel, climb ramps and stairs, stoop, crouch, and crawl; and (5) occasionally climb ladders, ropes, and scaffolds. AR 803, 805. Dr. VanCompernolle found no visual or environmental limitations. AR 805-06. While Plaintiff was unlimited in handling, fingering, and feeling, Dr. VanCompernolle found that Plaintiff was limited in reaching in all directions. AR 805.

On September 19, 2008, R. Lee, M.D., completed a Mental Residual Functional Capacity

Assessment. AR 811-13. Dr. Lee found that Plaintiff was "moderately limited" in her ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday without interruptions from psychologically based symptoms; (5) interact appropriately with the general public; and (6) respond appropriately to changes in the work setting. AR 811-12. He found no significant limitations for any other categories.

In July 2009, Board-certified physician Todd Nguyen, D.O., interviewed and examined Plaintiff at the request of the agency. AR 37-38, 57, 861-65. Dr. Nguyen diagnosed chronic neck and low back pain, and shoulder pain from an impingement in primarily the right shoulder. AR 863. On examination, Plaintiff's neck and low back were tender to touch, she had a negative straight leg raise test,[2] and positive Waddell's signs[3] which could indicate a non-organic cause of pain or symptom exaggeration. AR 863. Plaintiff had a reduced range of motion in the low back and right shoulder, and a normal neck range of motion. AR 863-64. She also had normal muscle strength (5/5) in her arms and legs. AR 864. Given these findings, Dr. Nguyen opined that Plaintiff could lift and carry 50 pounds frequently (consistent with heavy exertional level work), stand, sit and walk for 6 hours in an 8-hour workday, and should limit herself to occasional activities above the shoulder. AR 864.

Clinical psychologist Ahmed El-Sokkary, Psy.D., interviewed, examined, and tested Plaintiff in July 2009 at the request of the agency. AR 34, 857-59. Plaintiff reported head, back, shoulder, and knee injuries and complained of poor sleep. AR 857. On examination, Plaintiff was polite, cooperative, alert and oriented, made good eye contact, and had logical and goal-directed thought processes. AR 857. Testing revealed an average I.Q., below average psychomotor speed,

---

[2] A negative straight leg raising test indicates no nerve impingement due to a herniated disc. Christopher J. Centeno, The Spine Dictionary, 251 (1999).

[3] Waddell's signs are responses to a series of five tests designed to illicit nonorganic pain behavior. The Spine Dictionary, 285. Positive Waddell's signs are an indication of symptom magnification or malingering. *Id.*

4

and low average memory. AR 858-59. Based on the results of the examination and testing, Dr. El-Sokkary opined that Plaintiff had the cognitive and emotional ability to understand, remember and perform simple to moderately difficult tasks. She could maintain concentration, persistence, and pace for basic to moderately complex work, and would be able to interact appropriately with supervisors and co-workers. AR 859.

In August 2009, State agency physician Sadda V. Reddy, M.D., reviewed the longitudinal physical medical evidence and opined that, given Plaintiff's history of neck and shoulder pain, she could lift and carry 25 pounds frequently and 50 pounds occasionally, and stoop and reach overhead occasionally. AR 37, 867-69. Also in August 2009, a State agency psychologist, A. Middleton, Ph.D., reviewed the mental health evidence and opined that Plaintiff had a medically determinable impairment (adjustment disorder) that did not significantly limit her ability to perform basic work activities (i.e., a non-severe impairment, 20 C.F.R. § 416.930(c)). AR 874-84. The psychologist opined that Plaintiff's mental health symptoms mildly restricted her activities of daily living and ability to maintain concentration, persistence, or pace, but did not limit her ability to function socially. AR 882.

In August 2010, Plaintiff was interviewed and examined at Highlands Hospital in conjunction with an emergency hysterectomy. AR 988-90. Plaintiff reported that her only medications were a daily aspirin and iron supplement, and an occasional stool softener. AR 988. She appeared a "well developed, well nourished female" who was "alert and oriented and in no acute distress." AR 989. She had a normal physical examination and denied headaches. AR 998-99.

In April 2011, clinical psychologist Aparna Dixit, Psy.D., reviewed Plaintiff's medical records, and examined and tested her at the request of the agency. AR 35, 38, 1147-51. Plaintiff complained of memory loss, distractibility, depressed mood and feelings of hopelessness. AR 1149. She told Dr. Dixit that she had never had counseling or psychotherapy, and although she had a prescription for a pain reliever (Naproxen), she did not take it. AR 1149. Plaintiff had a normal mental status examination: coherent speech, logical thoughts, intact insight and judgment,

1  and no reported delusions or thoughts of suicide. AR 1148-49. Testing revealed a low average
2  I.Q., mildly decreased memory functioning, and average psychomotor speed. AR 1150. Dr. Dixit
3  noted there was evidence of depression, anxiety, and social isolation. AR 115. She assessed a
4  Global Assessment of Functioning[4] ("GAF") score of 58, which indicates moderate symptoms or
5  moderate difficulty in social, occupational, or school functioning. AR 1150. Based on testing and
6  exam results, Dr. Dixit opined that Plaintiff was mildly to moderately limited in her ability to
7  understand and complete complex tasks, adapt to change and withstand stress in the workplace,
8  and interact appropriately with supervisors, peers, and the general public. AR 1151. Plaintiff was
9  unrestricted in her ability to understand and complete simple, repetitive tasks, and communicate
10 effectively in words and writing. AR 1150.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

12 On January 30, 2009, Plaintiff filed a claim for Disability Insurance Benefits, alleging a
13 disability since April 23, 1999, due to herniated disc in lower back, neck, shoulder damage, and
14 mini strokes. AR 354-59. The Social Security Administration ("the agency") denied Plaintiff's
15 application initially and on reconsideration. AR 132-39, 140-44. On November 12, 2009,
16 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 145-47. ALJ
17 Michael Blume conducted a hearing on January 25, 2011, at which Plaintiff appeared and testified.
18 AR 83-117. The ALJ also heard testimony from Medical Expert Richard A. Katzman, Vocational
19 Expert Ronald Morrell, and Kanika Parris, Plaintiff's friend. Plaintiff testified in person at a
20 supplemental hearing on July 11, 2011, where she was represented by counsel, Richard Gutstadt.
21 AR 48-82. The ALJ also heard testimony from Vocational Expert Jeff Clark. AR 48.

---

[4] The GAF represents a present rating of overall psychological functioning on a scale of 0 to 100. Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000) (DSM-IV-TR). Recently the Am. Psychiatric Ass'n published a fifth edition (DSM-5) and dropped GAF scores from its multiaxial diagnostic system "for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DSM-5, "the Multiaxial System," available at: http://dsm.psychiatryonline.org/content.aspx?bookid=556&sectionid=41101752(last visited on June 30, 2014).

**A.     January 25, 2011 Hearing**

At the January 2011 hearing, Plaintiff testified that she attended some college, last worked in April 1999, and had not applied for any jobs in the last two years because she did not think that her symptoms (memory loss, headaches, and fatigue) were "conducive" to full-time work. AR 88-89, 91, 93-94. She reported that she lived alone in an apartment, drove a car, shopped, visited her grandchildren, and went to church. AR 89-90.

Dr. Katzman reviewed Plaintiff's medical records, including records from a recent heart surgery, and testified that Plaintiff should have no permanent impairment from the resolved heart condition, and had no condition that since January 2009 met or equaled one of the agency's presumptively disabling impairments (listed impairment or Listing). AR 37, 106-09, 203. Dr. Katzman opined that Plaintiff could do medium exertional-level work with limitations to occasional neck movements and overhead reaching. AR 37, 109.

The ALJ presented the vocational expert the following hypothetical:

> [A]ssuming a hypothetical individual of advanced age with more than a high school education and the same past work as the claimant, who is limited to medium level lifting with occasional neck movements, occasional overhead reaching and occasional exposure to unprotected heights. And slight limitations in ADKS, social functioning, concentration, persistence and pace. Would that hypothetical person be able to do the claimant's past relevant work?

AR 114. The vocational expert testified that such a hypothetical person could perform Plaintiff's past relevant work as a security guard, packager, and credit clerk. AR 112-14. The vocational expert further testified that if the hypothetical person were also limited to simple repetitive tasks, she could perform Plaintiff's past relevant work as a packager, although it would negate the security guard and credit clerk positions. AR 115.

**B.     July 11, 2011 Hearing**

At the July 2011 hearing, the vocational expert heard additional testimony about Plaintiff's past relevant work as a packager. AR 58-59. The vocational expert testified that, based on his professional training and research, Plaintiff was not precluded from the packager job as generally performed by a limitation to occasional neck movements. AR 65-66, 68-71, 75.

7

**C.    The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[5] 20 C.F.R. § 404.1520(a). The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since January 30, 2009. AR 34.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: bilateral shoulder impingement syndrome and obesity. AR 34. Although Plaintiff also alleged brain damage and poor memory, the ALJ found her mental impairments non-severe based on "findings from the many State agency psychological examiners and reviewing consultants estimating only mild to moderate mental limitations. AR 34-35.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to

---

[5] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A).

8

the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P, Appendix. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff does not have an impairment that meets the criteria.  AR 35.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms.  20 C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere.  20 C.F.R. § 404.1545(e).  Here, the ALJ determined that Plaintiff has the RFC to perform a limited range of medium work as defined in 20 C.F.R. § 416.967(c).[6]  The ALJ found that Plaintiff can:

> (i) lift and carry up to 50 pounds occasionally and 25 pounds frequently; (ii) sit for up to 6 hours, (iii) stand or walk for approximately 6 hours in an 8-hour workday, with normal breaks; (iv) occasionally engage in neck movements and overhead reaching, (v) can occasionally climb scaffolds, ropes and ladders; and (vi) has slight mental limitations.

AR 35.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. § 404.1520(a)(iv)(4), (f).  Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

claimant has the RFC to do her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, based on the vocational expert's testimony, the ALJ determined that Plaintiff could perform past relevant work as a security guard, packager, and credit clerk. AR 38.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ did not reach the fifth step as he determined that Plaintiff could perform past relevant work.

**D.  ALJ's Decision and Plaintiff's Appeal**

On September 12, 2011, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 29-47. This decision became final when the Appeals Council declined to review it on December 10, 2012. AR 3-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On October 24, 2013, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 20. On November 21, 2013, the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 21.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064. 1066 (9th Cir. 1997), *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's

conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**DISCUSSION**

In her Motion, Plaintiff argues that the ALJ's decision should be reversed because he failed to consider multiple medical opinions and erroneously found that Plaintiff has past relevant work as a packager. Pl.'s Mot. at 3. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free of reversible legal error. Def.'s Mot. at 2. Although the Commissioner admits that the ALJ focused on the medical evidence dated after Plaintiff's current application, she argues that the doctrine of res judicata applies to Plaintiff's prior medical evidence. *Id.* at 3, 8. Because it finds remand appropriate on this issue, the Court turns to it first.

Plaintiff's argues that the ALJ failed to consider all of the medical opinions in the record in assessing her residual functional capacity. Pl.'s Mot. at 4. The ALJ determined that Plaintiff retained the RFC to lift and carry 50 pounds occasionally, 25 pounds frequently; sit for 6 hours and stand/or walk 6 hours in an 8-hour workday with normal breaks; occasionally engage in neck movements and overhead reaching; occasionally climb scaffolds, ropes and ladders; and slight mental limitations. AR 35. Based on this RFC, the ALJ determined that Plaintiff could return to her past relevant work as a security guard, packager, and credit clerk. AR 38. Plaintiff argues that

11

the ALJ erred because he failed to consider the opinions of Drs. Pon, Madani, and VanCompernolle. Pl.'s Mot. at 7.

In response, the Commissioner argues that the ALJ discussed and evaluated the evidence relevant to Plaintiff's current claim, and was not required to consider the evidence from prior adjudicated claims based on the principle of res judicata. Def.'s Mot. at 8. The Commissioner further argues there are no updated treating records related to Plaintiff's allegations of back, neck, shoulder, and brain damage for the relevant period, and Plaintiff does not point to any probative treating evidence for the relevant period because there is none. *Id.*

Although applied less rigidly to administrative than to judicial proceedings, the principle of res judicata apply to administrative decisions. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *see also* 20 C.F.R. § 416.1457(c)(1) (ALJ may dismiss hearing request or refuse to consider one or more issue(s) on res judicata grounds). The doctrine may be invoked to bar a claim that has already been finally decided, unless its application would "'contravene an overriding public policy or result in manifest injustice.'" *Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982); *see also Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (as amended). A binding determination of non-disability also creates a presumption of continuing non-disability with respect to the period after the date of the prior decision. *Lester*, 81 F.3d at 827; *Lyle v. Secretary of Health and Human Serv.*, 700 F.2d 566, 567 (9th Cir. 1983). The presumption may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. *Lester*, 81 F.3d at 827-28.

Here, the record reflects that Plaintiff filed previous applications in 2006 and 2008, which were both denied. AR 118-19, 122-31. There is no indication that Plaintiff appealed these decisions. Thus, it appears that res judicata could apply. 20 C.F.R. § 416.1457(c)(1). However, the ALJ makes no finding as to these previous decisions. "The Commissioner may . . . apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." *Lester*, 81 F.3d at 827. The ALJ's

decision is silent as to the prior applications.

As the ALJ noted, Plaintiff's most recent application alleges disability beginning April 23, 1999.  AR 32.  Despite this, the Commissioner admits that the ALJ focused only on the medical evidence that she considered relevant to Plaintiff's current application; that is, from the application date in January 2009 to the decision date in September 2011.  Def.'s Mot. at 3.  If the Commissioner intends to apply res judicata and therefore disregard years of medical evidence, it seems prudent to at least make such a finding known in the decision below.  Further, there are certain instances in which res judicata may not be applied, such as where the claimant was unrepresented by counsel at the time of the prior claims, or where there is a change in the claimant's age category.  *Lester*, 81 F.3d at 827-28.  Based on the record before it, the Court is unable to determine whether any such exceptions apply.

Accordingly, the Court finds it appropriate to remand this case so that the ALJ can clarify whether the doctrine of res judicata was applied to this case.  On remand, the Commissioner must also determine whether any circumstances exist in this case that make the application of res judicata improper, thereby requiring consideration of the record as a whole.

## CONCLUSION

For the reasons stated above, the Court REMANDS this case for clarification regarding the application of res judicata.  As the matter must be remanded, the Court declines to address Plaintiff's additional arguments.

**IT IS SO ORDERED.**

Dated: July 1, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge